h KIRBY, Judge.
The action under review lies in products liability. Plaintiff, Deborah Anderson, appeals the granting of summary judgment in favor of defendants, Baxter Healthcare Corporation and International Industries. The trial court granted summary judgment because it found that plaintiff failed to produce sufficient evidence identifying the hospital supply cart involved in her accident, or the cart’s manufacturer. We find the plaintiff put forth sufficient evidence to overcome the standard set forth in LSA-C.C.P. art. 966 C(2), as to her ability to prove any one element in her cause of action. The movant, defendant, has not shown that plaintiff is not capable of presenting evidence concerning any one element in her case, so that no genuine issue of material fact exists: Therefore, we reverse.

*842
STATEMENT OF FACT

At approximately 12:15 a.m., on May 31, 1994, plaintiff, Dr. Deborah Anderson, was working in the In-Patient Pharmacy at Tulane Medical Center. She had arrived at work at her usual time, about 11:30 p.m. One of Dr. Anderson’s | ^duties as hospital pharmacist was to make up intravenous (“I.V.”) preparations for administration to patients in the hospital. I.V. preparations are made up in a special room called the “clean room” or “I.V. area.” About forty-five minutes after she started work, Dr. Anderson entered the “clean room” to make up an I.V. preparation. One of the items she needed was located on a shelf against the wall, but she could not reach the shelf because an I.V. fluid supply cart was in the way.
The I.V. fluid supply cart was one of two such carts used by the pharmacy in an I.V. exchange cart system. Large bulk inventories, including bulk I.V. supplies, are kept in a distribution area called central supply. Every morning, two people would push one of the two carts, loaded with the same type and quality of I.V. fluid supplies, from central supply and deliver it to the pharmacy, and then push the second of the two carts, minus whatever supplies had been used during the last 24 hours, from the pharmacy back to central supply to be replenished. This cycle would be repeated every twenty-four hours, the two carts being shuttled back and forth between central supply and the pharmacy.
The two carts used in the I.V. exchange cart system appeared identical in size and shape, and were kept loaded with the same types and quantities of I.V. fluid supplies. In the pharmacy, the carts were used to store and move intravenous fluids and supplies, and were not used to store other types of supplies. Since the system used tow carts that were never completely unloaded, but simply replenished, that were shuttled back and forth every day between the central supply and the pharmacy, and that were only used for I.V. supplies, the system would |Rcontinue to use the same two carts as long as the system was in place and functioning properly.
Dr. Anderson testified she had worked with the same carts from the day she started at the Tulane Pharmacy. She describes the carts as made of stainless steel, about six feet tall, five to six feet wide, with bins and stainless steel shelves, and with one stainless steel rod at the top.
The I.V. fluid supply cart that was blocking Dr. Anderson’s access at 12:15 a.m. on May 31, 1994, was loaded with the amount of supplies, bottles and bags of I.V. fluids, usual for that time of night. To move the I.V. supply cart out of the way, Dr. Anderson, who is five-feet-seven-inches tall, stood facing the broad side of the cart and took hold of the frame at either end of the cart (lengthwise), at about shoulder height. She then stepped back, pulling the cart towards her. Instead of rolling towards her, the cart and its contents tipped over and fell on her, knocking her down to the floor and landing on top of her. No one else was expected in the pharmacy until 6:30 a.m. When she was able to pull herself out from under the cart, she saw that her foot was going in one direction and her leg in another. Eventually she was able to reach a telephone and call Tulane Security for assistance.
Tulane Security took two Polaroid photographs, neither intended to show the cart that had tipped over. The first Polaroid photograph, labeled “Exhibite (sic) # 1 Employee Debbie Anderson with broken anckle (sic)”, shows Dr. Anderson still lying on the floor on her back holding her left leg, the foot rotated out of its normal ^anatomical position. The second Polaroid photograph, labeled “Contents of fluid cart *843 in a pile Exhibit # 2”, shows a large quantity of I.V. fluids on the floor.
In the second photograph, part of Dr. Anderson’s face and her eyeglasses are also visible, and a small part of the frame and wheel assembly of the cart can be seen at the extreme right hand edge of the photograph. This detail was analyzed by an expert in photography and compared to another photograph of a cart, taken nine months later, known to be manufactured by defendanl/appellee, American Hospital Supply Corporation/Baxter. The expert’s opinion was that the carts that were being used when Dr. Anderson returned to work and the cart that fell on her were identical.
Three months later Dr. Anderson returned to work on restricted duty. In her affidavit, she testified that at that time she saw the same two carts being used in the same pharmacy.
The labels on the two carts being used nine months after her injury were copied by plaintiffs counsel. According to the affidavit the cart in the aforementioned photographs is designated GtaOOOOl-Gta00024, it is the same size, shape, model, color and configuration as one that fell on her. The information on the carts stated that they were manufactured by the corporate predecessor of defendant/appellee Baxter Healthcare Corp., American Hospital Supply Corporation.
On May 26, 1995, plaintiff filed a product liability lawsuit. Plaintiffs petition alleged that the carts used in the I.V. fluid exchange cart system were | ¡^unreasonably dangerous in normal use because of a defective design, a design defect common to all carts of the same model. Specifically, plaintiff alleged that the supply carts were defective because they had been designed with a wheel base that is too narrow in relation to the height of the supply cart, resulting in a high center of gravity and inadequate lateral stability. This defective design created a hazardous and dangerous condition for any person who tried, like Dr. Anderson, to move the cart from the side: the tall, heavily laden cart could tip over and fall on the person attempting to move it.
Plaintiff also alleged failure to warn.
On August 7, 1995, defendant International Industries, Inc. asserted a third party demand against Baxter International, alleging the cart that injured plaintiff had been manufactured by American Hospital Supply Corporation, and that Baxter was the corporate successor of AHSC.
On November 6, 1995, plaintiff amended her petition to add as defendants Baxter Healthcare, Inc. (defendant/appellee) and Baxter International, Inc. Baxter Healthcare filed an answer and discovery ensued. Baxter International filed an exception of lack of jurisdiction.
After some discovery, defendant Baxter Healthcare filed a motion for summary judgment, arguing that Dr. Anderson “.... fails in her burden of proof to identify the cart, or the cart’s manufacturer.” Dr. Anderson, in opposition, filed her affidavit stating that the two carts which were being used in the pharmacy when she returned to work were identical to the ones which she had been using |6when she was injured, that the two carts whose labels were photographed were the same size, shape, model, color and configuration as the one that fell over on her.
Dr. Anderson, in her opposition to Baxter’s motion for summary judgment, in addition to her own affidavit, also attached a copy of a portion of the deposition of Richard Tringali, Baxter’s expert on product identification. Tringali stated he had been employed by Hamilton Manufacturing, AHSC and by Hamilton Industries. He also admitted that AHSC/Baxter manufactured the cart that was shown in the *844 1995 photograph of a cart at Tulane, which Dr. Anderson identified as the same as the one which fell over her.
The trial court granted Baxter’s motion for summary judgment.

STATEMENT OF THE LAW

In a recent reversal of summary judgment we stated:
It is well settled that appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. LSA-C.C.P. art. 966; Stevedoring Services of America/Logistic Services, v. Kahn, 98-0926 (La.App. 4 Cir. 12/9/98), 726 So.2d 58. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 195.
Barbarin v. Dudley, 2000-0249 (La.App. 4 Cir. 12/20/2000), 775 So.2d 657, 659.
Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Azreme, Corp. v. Esquire Title Corp., 98-1179 (La.App. 5 Cir. 3/30/99), 731 So.2d 422. Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant 17and an insufficient basis to render a summary judgment against that party. Held v. Avondale Industries, Inc., 95-1788 (La.App. 4 Cir. 4/3/96), 672 So.2d 1106, 1108.
Id, at 660
Louisiana Code of Civil Procedure article 966 states that summary judgment is not to be granted if there exists a genuine issue of material fact. Specific to this case, LSA-C.C.P. art. 966 C(2)[1] provides that since defendant does not bear the burden of proof at trial on the issue of who manufactured the cart, and if it can point out an absence of factual support for plaintiffs claim that defendant manufactured the cart, then the plaintiff must produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. To phrase it another way, the non-movant must produce sufficient evidence so as to ensure that a genuine issue of material fact still exists as to any one element of its case. If the non-movant can do so, summary judgment should be denied.
In the trial court’s reasons for granting the summary judgment it stated that plaintiff: “fails in her burden of proof to identify the cart, or the cart’s manufacturer.” The trial court found that an element in the products liability case, i.e. of proving the defendant manufactured the product, was not sufficiently satisfied.
Here the affidavit of the plaintiff identified the carts being used in the Tulane lab photos of 1995. Mr. Tringali’s affidavit identified the defendants as the manufacturers of the cart in the photo. The affidavit of the photography expert alludes to the relation between the photos taken af *845 ter accident of the plaintiff and | sthe photos of 1995. Based upon these affidavits, we find that the burden of LSA-C.C.P. art. 966 C(2), i.e. to offer some evidence to prove that the defendant manufactured the product, is satisfied.
Moreover, we find that to not accept the plaintiffs affidavits as being true is to make a judgment as to the credibility of the affiants, something that is not proper for a summary judgment procedure.
Therefore, we reverse the granting of summary judgment and we remand for a trial on the merits.
REVERSED AND REMANDED.

. La.C.C.P. art. 966 C(2): The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.