| NKEMDI AGWARAMGBO | * | NO. 2023-CA-0478 |
| AND EZINNE AGWARAMGBO | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| WARREN SEALS, SWIFT | | FOURTH CIRCUIT |
| TRANSPORTATION | * | |
| COMPANY AND MOHAVE | | STATE OF LOUISIANA |
| TRANSPORTATION | * * * * * * * | |
| INSURANCE COMPANY | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-04817, DIVISION "F-14"
Honorable Jennifer M Medley
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

**JENKINS, J., CONCURS IN THE RESULT WITH REASONS**

Pius A. Obioha
Joseph R. Barbie Sr.
PIUS A. OBIOHA & ASSOCIATES, LLC
1550 North Broad Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFFS/APPELLANTS

Heather N. Shockley
Michael Royce Sistrunk
MCCRANIE, SISTRUNK, ANZELMO, HARDY MCDANIEL & WELCH, LLC
195 Greenbriar Boulevard
Suite 200
Covington, LA 70433

      COUNSEL FOR DEFENDANTS/APPELLEES

           **REVERSED AND REMANDED**
           **JANUARY 31, 2024**

Plaintiffs-Appellants, Nkemdi Agwaramgbo ("Mr. Agwaramgbo") and Ezinne Agwaramgbo ("Ms. Agwaramgbo") (collectively, "Plaintiffs"), appeal the trial court judgment dated, April 3, 2023, which granted the motion for summary judgment filed by Defendants-Appellees, Warren Seals ("Seals") and Swift Transportation Company ("Swift") (collectively, "Defendants"). For the following reasons, we reverse the trial court's judgment and remand the matter for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

This lawsuit stems from a multi-vehicular collision that occurred in the evening on or about May 19, 2017, in the far right lane of US 90 East in New Orleans, Louisiana.

According to the petition, Seals who was operating a 2003 Freightliner 18-wheel tractor trailer, rear-ended Shilda Richardson ("Richardson"), driving a 2013 Acura MDX. Richardson's car thereafter struck a 2006 Toyota Tundra, operated by Loi Nguyen ("Nguyen"). Plaintiffs allege that Nguyen's vehicle then struck a 2013 Honda CRV. The Honda CRV was operated by Mr. Agwaramgbo and Ms. Agwaramgbo was the guest passenger.

1

As a result of the accident, Plaintiffs filed suit on May 15, 2018, against Seals; Swift,[1] the owner of the 18-wheeler; and Mohave Transportation Insurance Company, the insurer of the 18-wheeler.

On December 8, 2021, Defendants filed a motion for summary judgment seeking to dismiss Plaintiffs' claims against them on the grounds that Plaintiffs cannot prove negligence on the part of Seals or Swift.

In support of the motion for summary judgment, Defendants submitted: the petition for damages, an affidavit by Anne Rowel of the Claims Department for Swift, which authenticated and attached a dash-cam video of the incident; the affidavit of Eric Burson ("Burson"), a forensic accident reconstructionist, who authenticated and included his expert report on the May 19, 2017 accident; excerpts of the deposition of both Plaintiffs, excerpts of the depositions of Nguyen, Richardson, and Khedric Motten ("Motten"), the passenger in the vehicle driven by Richardson.

The dash-cam video depicts the night of accident from the perspective of the 18-wheeler.[2] There are four lanes visible. The 18-wheeler is in the far right lane, which Burson's report refers to as the first lane. The Acura is in the lane to the left of the 18-wheeler, the second lane. The Toyota truck is the first lane in front of the 18-wheeler. An unidentified car is in the third lane. The unidentified car changes lanes to the second lane in front of the Acura and then changes lanes again to the first lane and begins to break in front of the Toyota. The Toyota brakes. The

---

[1] In the petition, Plaintiffs named Swift Transportation Company as a defendant. In its answer, Swift alleged it was improperly named and that Swift Transportation Co. of Arizona, LLC is the correct name. However, in Defendants' motion for summary judgment and appellee brief, they refer to Swift as Swift Transportation Company.

[2] The make and model of the vehicles are not necessarily clear in the video, however, the car details can be gleaned from the testimony and evidence in the record.

Acura activates its blinker, changes lanes to the first lane in front of the 18-wheeler, and brakes. The 18-wheeler strikes the back of the Acura and the Acura strikes the Toyota. The unidentified car changes back to the second lane and continues to drive on the highway. The Honda CRV is not visible in the video.

In Burson's affidavit and report, he opined that the Honda CRV, operated by Plaintiffs, was not involved in the May 19, 2017 accident. He further states that there were no vehicles between the Toyota and the unidentified car.

Mr. Agwarmgbo testified that he could not see the Honda CRV he operated in the dash-cam video but alleged that it was in front of the Toyota pick-up truck. He indicated that the headlights on the cars provided a glare in the video footage. He testified:

> In this video footage, I cannot make out the Honda CR-V. I'm seeing largely headlights, headlight glares. And the final cut-out, where it's the three vehicles, I cannot physically see my Honda CR-V, but it is in front of that pickup truck.

Mr. Agwaramgbo also stated that he could not determine the color of the car in front of the pick-up truck.

Ms. Agwaramgbo testified that she did not observe the Honda CRV, in which she was a passenger, in the video of the accident. She stated that she could not see "past the pickup truck" but that was "where our car would have been."

Nguyen testified that there was only damage to the back of his Toyota, not the front. He acknowledged that there was a vehicle approximately 100 feet in front of his truck but stated that he "never hit it." Nguyen testified that the car did pass in front of his car "so close I have [sic] to stop completely. And then the two car [sic] impact [sic] me in the back." He stated that if he had hit that car in front

3

of him he would have damage to his vehicle and there was neither damage nor a scratch to the front of his vehicle.

Richardson testified she did not see "any other vehicles at the scene who might have been involved in the accident."

Motton stated that there were only three cars involved in the accident.

Defendants thus argued in their motion that the above evidence shows that Plaintiffs' vehicle was not a party to the accident. They further claimed that Plaintiffs' deposition testimony does not create an issue of fact because no reasonable person could find that testimony to be true after viewing the video evidence.

Plaintiffs filed an opposition to the motion for summary judgment on March 2, 2023, claiming genuine issues of fact remain which mandate a denial of Defendants' motion for summary judgment.   Plaintiffs submitted the following exhibits in opposition: excerpts of the deposition of Nguyen; the petition for damages; the affidavit of Mr. Agwaramgbo; excerpts of the deposition of both Plaintiffs; the motion for summary judgment; excerpts of the deposition of Seals; an expert report and affidavit of Michael Buras ("Buras"), an accident reconstruction expert; photographs of the damages allegedly caused to Plaintiffs' vehicle;[3] and deposition subpoena requests for Nguyen and Officer Alexander Reiter ("Officer Reiter").[4]

---

[3] The pictures attached to the opposition are black and white and it is difficult to discern the purported damages to Plaintiffs' vehicle.  It is important to note that these pictures are not identified by affidavit or otherwise verified and thus not should be considered on summary judgment. *See* La. C.C.P. art. 966(A)(4)(a) (providing an exclusive list of documents that may be filed in support of or in opposition to a motion for summary judgment and is set forth below); La C.C.P art. 966(A)(4)(a), cmt (c) of 2015) (stating that subparagraph (4)(a) "does not allow the filing of documents that are not included in the exclusive list, such as photographs, pictures, video images, or contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached"); *State v. Poree,* 2022-0425, p. 5 (La. App. 4 Cir. 12/20/22), 355 So.3d

4

In the opposition, Plaintiffs' objected to the use of the depositions of Nguyen, Richardson, and Motton on the grounds that they are collateral depositions taken from other proceedings and are not "on file" for use in the summary judgments as required by La. C.C.P. art. 966(B) and thus should not be considered on summary judgment.[5]  Although Plaintiffs objected to the deposition of Nguyen they attached and relied on it in their own opposition.  Plaintiffs also argued that there is conflicting testimony as to whether the Toyota operated by Nguyen struck the rear of the Honda CRV operated by Plaintiffs, which precludes summary judgment.[6]

In the excerpts of the deposition Plaintiffs' submitted, Nguyen initially identified the vehicle in front of him as the Honda CRV but then stated he did not

1105, 1109 (unsworn or unverified documents attached to a motion for summary judgment are not self-proving and will not be considered as competent summary judgment evidence); *see also* n. 4. However, no objection was made to these photographs.

[4] Plaintiffs also included the Uniform Motor Vehicle Traffic Crash Report, authored by Officer Reiter as well as the body-cam video of Off. Reiter as evidence.  However, as noted later herein, the accident report and the body-cam footage were stricken and not considered on the motion for summary judgment.

[5] As noted by Defendants, La. C.C.P art. 966 no longer contains the requirement that that depositions be "on file."  La. C.C.P. art. 966 (4)(a), which sets forth permissible evidence on summary judgment, states:

> (4)(a) The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

[6] Plaintiffs also noted that Officer Reiter's report and body-cam footage indicated that they were present at the time of the crash.  They further contended the collateral deposition of Nguyen, Richardson, and Motton contradict the statements of Officer Reiter.  As noted below, the police report and body-cam video was not considered on summary judgment. *See* n. 3.

know the type of car, only that it was "small."[7]  When asked if he hit the vehicle in front of him when he was attempting to stop, Nguyen stated:

> I stopped. The guy is right close — right close to me, and then he just pulled a little bit — like little bit, like, 100 feet. And then he stopped.

> But I was stopped completely, and then somebody behind me hit me.

Nguyen stated that he was only struck in the back of the vehicle "not in front."  He said "the front is [sic] not damaged with that accident."  Nguyen testified he only took pictures of the back of the vehicle because there was no damage to the front.

Nguyen stated that he felt two "impacts" from the rear.  When questioned about the location of the "vehicle in front" during the first impact, he testified that it had "already passed me far up, the car in front of me." Nguyen estimated that the car was 100 feet ahead of him when he was rear-ended the first time and stated that he "never" hit the car in front of him.

Nguyen stated did not know why the passengers of "the car in front" of him waited at the accident scene for the police to conduct an investigation.[8]  The transcript provides:

> [Kurt Offner][9] Q. If you never hit the vehicle in front of you, do you have any idea why that car and its owner and driver sat around for the police to investigate?

---

[7] The transcript provides:

> Q. The vehicle in front of you, was that a Honda CRV?

> A. Yeah. It's a small car. I don't know what type of car is it. But it's like a -- so it's dark. So I didn't pay attention. I don't know. But I only know it's a small vehicle.

[8] Nguygen's testimony regarding the identity of the "car in front" of his truck is unclear.  At some points in the transcript, it appears that the "car in front of" Nguygen was the unidentified car. However, at other times, counsel and Nguyen refer to the "car in front" as the Honda CRV driven by Plaintiffs.

[Nguyen] A. That, I don't understand.

But I only know that that car tried to pass right in front of me so close that I have to stop right away.

Q. So it's your testimony that you don't understand why that car in front of you waited around for the police to investigate?

A. I don't -- I don't know. I don't understand why.

But because of that car try to pass me so close, I have to stop completely. And then the two car impact me in the back, but that car is already, like, passed around 100 feet from me.

Q. So the car in front of you, it did wait around. The car in front of you and its owner/driver did wait around for the police to show up. Correct?

A. Yeah, he was still there -

INTERPRETER: I don't know if you can say "he" --

THE WITNESS:

(through interpreter)

But that vehicle is still there, like, around 100 feet when the police came to do the investigation.

By MR. OFFNER:

Q. And you; understand that the driver of the vehicle in front of you claims that you hit his vehicle?

A. He lied. Because he -- he pass in front of me too Close. I have to stop. If I don't stop right away, I would hit him hard.

Q. Did you hit him soft?

. . .

Q. The vehicle you said tried to pass in front of you real close, how fast were you going when that happened?

A. Around 45 to 50 miles.

Q. Did you have to slam on your brakes?

A. Yes.

---

[9] The record indicates that Kurt Offner represents Richardson in a separate lawsuit.

In his affidavit, Mr. Agwaramgbo attested that he was driving his parents' 2013 Honda CRV on May 19, 2017, with his sister as a guest passenger. He stated that due to traffic congestion he was at a complete stop and was rear-ended by a Toyota pick-up truck as he was approaching the Slidell exit on US 90. Mr. Agwaramgbo stated there were four vehicles involved in the accident: the 18-wheeler, the Acura, the Toyota truck, and the Honda CRV, which he and his sister were occupying. He stated that he observed damage to the front of the pick-up truck that struck his car and that he had damages to the back of his car as result of the collision.

In his deposition, Mr. Agwaramgbo testified there were "three vehicles plus the 18-wheeler" involved in the accident. He stated that his "vehicle was in front of the pickup truck." Mr. Agwaramgbo testified that his car was the last car in the collision and that the first car or the "initiator" was the 18-wheeler. He stated that he stayed after the accident and spoke with the investigating officer.

Ms. Agwaramgbo testified that the night of the accident, she and her brother were nearing the Slidell exit and some cars in front of them started to brake, they started to slow down the Honda CRV, and then "felt a car hit [them] from behind." She indicated that four vehicles were involved in the collision: the Honda CRV, her brother was operating; the truck that struck them; "another SUV;" and the 18-wheeler. Ms. Agwaramgbo did not recall seeing an 18-wheeler or the pick-up truck prior to impact. She testified that there was damage to the rear bumper on the Honda CRV and that it was subsequently fixed.

Seals testified that he got a ticket as result of the May 2017 accident, which he paid. He did not recall that there was a fourth vehicle involved in the crash. When questioned about the police diagram of accident and whether it accurately

depicted the collision, Seals stated: "I don't know. All I seen [sic] was my truck and these two. I didn't see this car up here." Seals also stated he did not know "the total number of people … that were impacted by [the] accident."

In Buras's affidavit and expert report, he opined that based on his review of the evidence, there were four vehicles involved in the accident "with damage to all said vehicles."

Defendants filed a reply on March 10, 2023. In their reply, they objected to the police report, the Buras report; and the bodycam footage of Officer Reiter on the grounds that these items of evidence were not proper summary judgment evidence.[10]

Plaintiffs filed a response to the Defendants' reply memorandum on March 11, 2023.

The motion for summary judgment came for hearing before the trial court on March 17, 2023. The trial court overruled Plaintiffs' objections to the collateral depositions and struck the police report and body-cam footage of Officer Reiter. It thereafter granted the motion for summary judgment from the bench.[11]

---

[10] *See* n. 1. Defendants also objected to the consideration of the affidavit of Mr. Agwaramgbo because it was generated after the deposition in response to the motion for summary judgment. The trial court did not exclude the affidavit or the expert report of Buras from evidence.

[11] The trial court stated, in part:

> For what we have in front of us today, I don't get to those additional contested facts when I look at the video of the actual accident.

> I would go ahead and strike the police report and the -- I think it's the body cam footage or is it the dash-cam from NOPD, as all of that is -- I don't even know how far after that fact that would be.

> I'm going to grant the Motion for Summary Judgment. I find that the evidence that's been presented that vehicle was not involved in this accident. This is a final judgment according to 1919.

The trial court executed the judgment to that effect on April 3, 2023, which stated, in part:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Motion for Summary Judgment filed by Defendants is hereby GRANTED. The Court finds that Defendants have carried their burden of demonstrating that there are no genuine issues of material fact in dispute and that movers are entitled to judgment as a matter of law, as more fully stated in the Court's oral reasons given in open court on March 17, 2023. This matter is hereby dismissed in its entirety, with prejudice

> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff's Exhibit C: NOPD's investigating officer's (detective) Alexander Reiter Crash Report #E-24224-17 and Exhibit K: Body Cam Video of the Alexander Reiter are hereby STRUCK from the record.

> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs Objection to the Use of Collateral Depositions is hereby OVERRULED.[12]

Plaintiffs' timely appeal followed.

---

And there was another issue. I'm going to overrule the plaintiff's objection to the depositions attached to the defendant's Motion for Summary Judgment, as those depositions, they're from a different case but they are supported by affidavits in this, you know, and they are included as evidence.

[12] The record shows that Plaintiffs requested written reasons for judgment in March of 2023. According to the trial court, the motion was filed without an order attached and the "Clerk's Management System reflects the 'Pleading Location' as 'Sent to Record 03-212023'" and that he trial court was "never made aware of Plaintiffs [sic] request until June 5, 2023, when Plaintiff [sic] called to check on the status of the outstanding reasons." On June 12, 2023, the trial court issued written reasons for judgment, which provided, in pertinent part:

> This Court adopts, in toto, the *Memorandum in Support of the Motion for Summary Judgment*, filed on behalf of Defendants, Warren Seals and Swift Transportation Company, as its written reasons for judgment. This Court further adopts, in toto, the *Reply Memorandum to Plaintiff's* [sic] *Opposition to Motion for Summary Judgment and Motion to Strike Exhibits*, as its written reasons for judgment. Specifically, this Court finds Defendants have carried their burden of demonstrating that there are no genuine issues of material fact in dispute. In Accordance with the express language provided under Louisiana Code of Civil Procedure Article 966(A)(4), Plaintiffs' Exhibit C, NOPD's investigating officer's Alexander Reiter Crash Report #E-24224-17 and Exhibit K, Body cam video of Alexander Reiter are hereby stricken from the record as improper summary judgment evidence.

> As such, Defendants *Motion* is granted wherein all of Plaintiffs' claim against said Defendants are dismissed with prejudice.

**APPLICABLE LAW AND ANALYSIS**

This Court in *Carlin v. Clear Blue Ins. Co.*, 2022-0566, pp. 7-9 (La. App. 4 Cir. 2/8/23), 357 So.3d 533, 537-38, set forth the standard of review on motions for summary judgment as follows:

> A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546.
>
> "A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006 (quoting *Samaha v. Rau*, 2007-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882–83); *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.
>
> La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).
>
> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:
>
> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the

existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id.*

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Crosby v. Sahuque Realty Co., Inc.*, 2021-0167 [p. 6 (La. App. 4 Cir. 10/13/21), 366 So.3d 123, 128] (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Crosby*, 2021-0167, pp. 6-7, [366 So.3d at 128-29] (citing *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81).

A trial court may not weigh conflicting evidence or make credibility determinations in deciding a motion for summary judgment. *Danna v. Ritz-Carlton Hotel Co., LLC,* 2015-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 and *Jeffers v. Thorpe*, 1995-1731, p. 4 (La. App. 4 Cir. 1/19/96), 673 So.2d 202, 205). Additionally, "[a]ny doubt regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Danna,* 2015-0651, p. 7, 213 So.3d at 32 (quoting *Smith*, 1993-2512, p. 27, 639 So.2d at 751).

"Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant and an insufficient basis to render a summary judgment against that party." *Jones v. Gov't Emps. Ins. Co.,* 2016-1168, p. 7 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921 (quoting *Barbarin v. Dudley*, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660).

Louisiana employs a duty-risk analysis to resolve claims of negligence under La. C.C art. 2315. *See Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, p. 20 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 412 (quoting *Chanthasalo v. Deshotel*, 2017-

0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107).   To prevail under a negligence claim, the plaintiff must prove: (1) the defendant had duty to conform his conduct to specific standard; (2) the defendant failed to conform his conduct to appropriate standard; (3) defendant's substandard conduct was cause-in-fact of injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.* (quoting *Chanthasalo*, 2017-0521, p. 6, 234 So.3d at 1107-08).

La. R.S. 32:81 (A) provides that a "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

On appeal, Plaintiffs argue that the trial court erred in granting the motion for summary judgment because genuine issues of material fact remain that should be determined by the trier of fact. Defendants, however, contend that the uncontroverted evidence shows that Plaintiffs were not a party to the subject accident and that the trial court properly granted summary judgment.  Defendants argue that the dash-cam footage alone showed Plaintiffs were not involved in the collision and thus Plaintiffs have no cause of action against Seals and Swift.

As noted above, a review of the dash-cam shows the collision of three vehicles: the 18-wheeler, the Acura, and the Toyota truck.  The Honda CRV is not visible and the unidentified car that was in front of the Toyota appears to leave the scene after the accident.  Additionally, Nguyen testified that only three vehicles were involved in the car accident.[13] Further, Nguyen estimated that the car in front

---

[13]The two other witnesses, Richardson and Motton, also stated that only three vehicles were involved in the collision.  As noted above, Plaintiffs objected to the collateral depositions of Richardson, Motton, and Nguyen at the trial court level.  They also allege on appeal that the trial court erred in allowing Defendant to submit "collateral deposition taken for the use in totally

of his truck was 100 feet away when he was rear-ended.  He testified that did not strike the preceding car and also stated that he had no damage to the front of his vehicle. The expert report and affidavit of Burson also stated that Plaintiffs were not parties to the accident.

However, both Plaintiffs testified that they were involved in the subject collision and were rear-ended by the Toyota truck operated by Nyugen.  While both Plaintiffs admitted they could not "physically see" the Honda CRV in the video footage of the incident, as noted by Mr. Agwarmgbo in his deposition there is a glare in the video due the headlights of oncoming traffic.  The tail lights and the brake lights of the vehicles in the exit lane and surrounding lanes also provide some glare.  Further, Plaintiffs testified that they were located in front of the Toyota and the fourth car in the accident.  Also, Ms. Agwarmgbo testified that she felt the impact of the Toyota and both Plaintiffs indicated they had damage to their vehicle as a result the incident.  Moreover, Buras's affidavit and expert report provided it was a four car collision and that all four vehicles sustained damage. Additionally, while the police report cannot be considered, both Burson and Buras reference Officer Reiter's statements in their expert reports, which indicated that there were four vehicles involved in the accident and that "vehicle 4 [the Honda CRV] had very minor damage to its rear bumper."  Burson also included the crash report diagram prepared by Officer Reiter, which depicts four vehicles in the

---

separate litigation where [Plaintiffs'] counsel was never noticed and thus denied the opportunity to cross examine those deponents." Plaintiffs contend that for deposition to be admissible in court, they must conform with La. C.C.P. art. 1450(A). Defendants argue note that this the first time Plaintiffs raised La. C.C.P. art. 1450 as grounds not to consider the collateral depositions. However, because we find that even without the depositions of Richardson and Motton a genuine issue of material fact remains for the trier of fact, we do not address the admissibility of the collateral depositions of Richardson and Motton.  We do consider the deposition of Nguyen, however, because Plaintiff included and relied on his deposition in opposition to the motion for summary judgment.

collision. Further, while Seals testified he did not recall a fourth vehicle, he indicated he was unaware of the number of individuals involved in the collision. Also, it is undisputed that Plaintiffs stayed and spoke with investigating officers after the accident. Moreover, although Nguyen testified he never hit the car that was in front of him, the excerpts of the deposition testimony provided by the parties is somewhat confusing. At one point, Nguygen stated that the Honda CRV driven by Plaintiffs was ahead of his truck but another point he appears to be referring to the unidentified vehicle that fled the scene.

We find that conflict in the testimony and the expert reports would require an evaluation of the weight of evidence and an assessment of the credibility of the witnesses, which is not appropriate on summary judgment. *See Strategic Cap. Holdings, LLC v. Bennett*, 2021-0672, p. 3 (La. App. 4 Cir. 7/29/22), 366 So.3d 255, 258, *as clarified on reh'g* (9/20/22), *writ denied*, 2022-01572 (La. 1/11/23), 352 So.3d 983 (in determining whether a genuine issue of material fact remains for summary judgment purposes, the trial court cannot "consider the merits, make credibility determinations, evaluate testimony, or weigh evidence"). Further, while the Honda CRV is not discernable in the dash-cam footage of the accident, there is glare from the tail lights of the preceding cars as well as headlights from oncoming traffic and any doubt as to a dispute regarding a material issue of fact must be resolved in favor of a trial on the merits. *See Carlin*, 2022-0566, p. 9, 357 So.3d at 538; *see also Lewis v. Jazz Casino Co., L.L.C.*, 2017-0935, p. 6 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72 ("[f]actual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubts must be resolved in the opponent's favor"). Accordingly, genuine issues of

material fact exist regarding Defendants' liability for the accident and we find that the trial court erred in granting the motion for summary judgment at this time.

**CONCLUSION**

Although the dash-cam video appears to depict three cars involved in the accident, we find that the conflicting expert reports regarding the number of vehicles in the collision, the inconsistent and contradictory testimony of the Plaintiffs and Nguyen, and the glare contained in the video footage of the incident, is sufficient to create a material issue of fact for trial. As such, the matter was not ripe for summary judgment at this point in the proceedings.

For these and the reasons stated above, we find that the trial court erred in granting the motion for summary judgment in favor of Defendants. We reverse the trial court's judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**